**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-1262

OUMAR TOURE,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>H. Raymond Fasano</u> and <u>Madeo & Fasano</u> on brief for petitioner.
<u>Carl H. McIntyre, Jr.</u>, Senior Litigation Counsel, <u>Jeffrey J. Bernstein</u>, Senior Litigation Counsel, and <u>Peter D. Keisler</u>, Assistant Attorney General, on brief for respondent.

March 17, 2006

**STAHL**, <u>**Senior Circuit Judge**</u>.  Oumar Toure is a native and citizen of Mauritania.  He entered the United States from Canada in May 2002 and in November of that year filed an application for asylum, withholding of removal, and relief under the Convention Against Torture.  In January 2003 the government instituted removal proceedings against Toure on a charge of being present in this country without having been properly admitted.  The Immigration Judge (IJ) who heard Toure's case found that he had not proven eligibility for any relief and ordered him removed to Mauritania.  The Board of Immigration Appeals (BIA) affirmed the IJ's order in a written opinion, and Toure brought a timely petition for review by this court.  After a careful review of the record, we affirm.

## I.

We relate Toure's account of the events culminating in his arrival in the United States.[1]  As a child, Toure lived in Mauritania with his parents, who owned two farms.  Toure is a member of the minority Soninke ethnic group and describes his group as "black Africans."  In 1989, when he was ten years old, the family, along with thousands of other ethnic minority Mauritanians, fell victim to forced emigration at the hands of the ruling Beydane ethnic group.  Armed members of the government militia, who were Beydane, came to Toure's family's land and threatened them with

---

[1]With one main exception, discussed below, the IJ found Toure to be a credible witness.

violence if they did not leave.  The Beydane told the family that "all blacks had to get out" and forced them onto a boat, which took them across the river into Senegal.

After spending six years at a refugee camp in Senegal, Toure's family returned to Mauritania in 1995 along with thousands of other repatriating refugees and reclaimed the family farms.  In the summer of 1996, the Beydane returned to the family's land.  This time, the Beydane told the family to leave because they could not produce adequate proof of ownership.  However, the family remained on their farm for the next two years; the militia returned several times but never became violent.  In 1998, Toure's family once again emigrated to Senegal, eventually moving in with a friend in the city of Dakar.  Toure and his family were not subjected to threats or harm in Senegal but did have difficulty finding work there. Toure testified that he would have stayed in Senegal had he been able to earn better wages.

Toure and his family had been in Dakar for three years when the son of the person with whom they were staying returned home from Canada, where he had been attending school.  The son suggested that Toure leave Senegal and lent him documents to use to travel to Canada.  Arrangements were then made to smuggle Toure over the U.S.-Canadian border in a boat, and he arrived in the United States near Buffalo, New York, in May 2002.  He applied for asylum in November of the same year, claiming that he had been subjected to

race-based persecution in Mauritania and that he feared future persecution should he be forced to return there.

At his hearing before the IJ, Toure testified that when the Beydane first came to his family's land in 1989 members of his family were beaten with the butt of a rifle. The IJ, noting that Toure had not made clear whether he himself was beaten or just his parents, found that Toure had not credibly established that he himself had been beaten. She concluded that he had not made the requisite showing of past persecution based on the events of that day in 1989. In addition, Toure had initially testified that his family was beaten during the second confrontation with the Beydane, in 1996, but then corrected his testimony to say that they were not beaten at that time. The IJ accordingly concluded that no persecution occurred then either. Finding Toure ineligible for asylum or other relief, she ordered him removed to Mauritania, his country of nationality.

The BIA adopted and affirmed the IJ's decision. In addition, the BIA stated that, even if Toure's family did suffer past persecution at the hands of the Beydane in 1989 when they were first forced to leave Mauritania, the fact that thousands of refugees, including Toure's family, returned to Mauritania in the mid-1990s manifested a change in country conditions sufficient to rebut any presumption of a well-founded fear of future persecution. Noting that Toure had not proven persecution upon his family's

return to Mauritania in 1995, the BIA affirmed the order of removal.  Toure now petitions for review.

## II.

We uphold the BIA's decisions on asylum claims unless the evidence presented by the petitioner compels a reasonable factfinder to conclude he is entitled to relief.  Nai Qing Xu v. Gonzales, 424 F.3d 45, 47-48 (1st Cir. 2005).  A petitioner hoping to be granted asylum, like Toure, bears the burden of proving he qualifies as a "refugee."  Id. at 48.  A showing of refugee status can be made either "(1) by demonstrating a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (2) by proving past persecution on account of one of the aforementioned grounds, which entitles an applicant to a presumption of a well-founded fear of persecution."  Diab v. Ashcroft, 397 F.3d 35, 39 (1st Cir. 2005) (citing 8 U.S.C. § 1101(a)(42)(A)).  Even if a petitioner has proven past persecution, the presumption that he has a corresponding well-founded fear of future persecution should he return to his native country can be rebutted by the government. The government bears the burden of rebutting the presumption by a preponderance of the evidence.  Manzoor v. U.S. Dep't of Justice, 254 F.3d 342, 347 (1st Cir. 2001).  Evidence of changed country conditions can suffice to rebut the presumption, as long as the

evidence negates the petitioner's own particular fear.  Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005).

The IJ concluded that Toure had not demonstrated past persecution in Mauritania.  The BIA agreed and added that even if the treatment suffered by Toure's family in 1989 is considered persecution, country conditions had changed enough that Toure had no well-grounded fear of future persecution in Mauritania.  In his petition to this court, Toure makes three arguments: (1) that the IJ had no basis for her determination that Toure's testimony about the beatings was not credible; (2) that the BIA was wrong to hold that conditions in Mauritania have changed enough to render Toure's fear of future persecution there unwarranted; and (3) that the evidence demonstrates that Toure did, in fact, along with his family, suffer persecution because of his race at the hands of the Mauritanian government in 1989.  We find that, even assuming the 1989 forced emigration constituted past persecution, the resulting presumption that Toure has a well-founded fear of future persecution is negated by the events that unfolded in the following years.  Accordingly, we affirm the BIA's decision.  (We do not address the question whether the documented return to Mauritania of thousands of refugees in the mid-1990s, generally speaking, constitutes a change in country conditions sufficient to rebut a well-founded fear of future race-based persecution stemming from earlier events.)

Determining whether a petitioner has demonstrated persecution calls for a case-by-case analysis. Manzoor, 254 F.3d at 346. Persecution "is not restricted to threats to life or freedom, [but] it requires more than mere harassment or annoyance." Id. (internal quotations and citations omitted). We assume for present purposes that Toure and his family were subject to persecution based on race when the Beydane ousted them from their land and forced them and other Soninkes to leave the country.[2] Subsequent events, however, must be taken into consideration. In 1995, Toure's family returned to Mauritania. They reclaimed their two farms and resided there peacefully for the next year and a half. When the Beydane returned a second time, their dispute with Toure's family concerned documentation of title, not race or ethnicity. Although the second confrontation might have been racially or ethnically motivated, the BIA did not find that it was, and the evidence presented by Toure does not mandate such a finding. Toure himself testified that the second dispute was about whether his family could prove ownership of their land and that the family chose to emigrate to Senegal, in contrast to the first eviction, when they were forcibly sent abroad by armed militia.

---

[2]The IJ found all of Toure's testimony credible except for his description of how the Beydane beat members of his family. Toure challenges this credibility determination, but we find it immaterial to the outcome of the case. Whether or not any physical violence occurred on that day in 1989, Toure's family was ousted from their home and forced to leave the country under threat of violence.

When all the evidence is viewed together, it is apparent that subsequent events in Mauritania and in the lives of Toure and his family "negate[d]" the "particular fear" Toure may have had after the 1989 ouster. Palma-Mazariegos, 428 F.3d at 35; cf. Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 258 (1st Cir. 2004) (upholding IJ's finding that petitioner lacked well-founded fear of future persecution where petitioner willingly returned to his home country and remained there "for more than two years after the alleged persecution peaked"). In short, after a careful examination of the record, we cannot say that the evidence compels the conclusion that Toure successfully demonstrated his eligibility for asylum by showing a well-founded fear of future persecution in Mauritania. We therefore do not disturb the judgment of the BIA denying Toure relief.[3]

## III.

For the reasons stated above, we **affirm** the decision of the Board of Immigration Appeals and **deny** Toure's petition for judicial review.

---

[3]If a petitioner has not established eligibility for asylum, he has also not established eligibility for withholding of removal, which erects a higher hurdle for a petitioner than does an asylum claim. See Jin Dong Zeng v. Gonzales, 436 F.3d 26, __ n.3 (1st Cir. 2006). As to Toure's petition for relief under the Convention Against Torture, he does not here challenge the IJ's determination that he was not entitled to such relief.