# United States Court of Appeals
## For the First Circuit

No. 08-1895

PABLO LÓPEZ-CASTRO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Lipez, Selya and Howard, Circuit Judges.

Randy Olen on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Anthony W. Norwood, Senior Litigation Counsel, and Richard Zanfardino, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

August 18, 2009

**SELYA**, **Circuit Judge**.  The petitioner, Pablo López-Castro, is a Guatemalan national, born in 1975, who seeks judicial review of a final order of removal entered by the Board of Immigration Appeals (BIA).  The petitioner concedes removability, but challenges the BIA's denial of his cross-application for withholding of removal.  After careful consideration, we conclude that the petition lacks merit.

The facts are straightforward. In May of 1995, the petitioner entered the United States without inspection.  Almost ten years later, the Department of Homeland Security issued a notice to appear, charging him with illegal entry into the United States in violation of 8 U.S.C. § 212(a)(6)(A)(I).  The petitioner admitted the truth of the factual averments contained in the notice, conceded removability, and cross-applied for withholding of removal.[1]

At a hearing before an immigration judge, (IJ), the petitioner testified about the travails that his family had endured in Guatemala in the early 1980s.  The general theme of his testimony was that, as members of an ethnic minority — the family was of indigenous Mayan Quiche ancestry — his relatives were mistreated by both the government and guerilla fighters.  The

---

[1] The petitioner sought alternative relief as well, but those requests are not now pursued.

petitioner was a mere lad at the relevant times, and his information was mostly second-hand.

Specifically, he recalled that when he was ten years old, his mother told him that two of his cousins had been slain by a paramilitary group in 1982. Around the same time, he also learned that, in 1982, his uncle and three more relatives (the uncle's wife, mother-in-law, and sister-in-law) had been murdered in their home. He admitted that he did not know who killed these relatives or why they were slaughtered.

In the same vein, the petitioner related that his father was compelled to serve on civil patrol duty during Guatemala's civil war. The petitioner attributed this forced service, in part, to his father's ethnicity. His father was killed in 1983 by guerrillas while on duty with his patrol unit. No further details were forthcoming.

At that juncture, the petitioner left school to help support his family. Notwithstanding the terrible events that had occurred earlier, he remained in Guatemala for many years.

The petitioner further testified that, in 1995, he repaired to the United States in order to find employment because of what he perceived as discrimination against the Mayan Quiche in the Guatemalan job market. Nevertheless, he was unable to offer any specific examples of such discrimination.

The civil war ended in 1996. There was, however, one more incident: according to the petitioner a group of gang members recently had attempted to burglarize his sister's house. He ruminated on what dangers he might face should he be removed to his homeland because, as a person returning from the United States, he would be perceived by gang members as a person of means (and, thus, as a high-yield target).

To complete his case, the petitioner submitted documentary evidence, including several Amnesty International reports and a 2006 State Department report on human rights for Guatemala. These reports indicate that although Guatemala is no longer embroiled in a civil war, indigenous Mayans are subjected to racial discrimination, politically underrepresented, and disproportionately poor.

At the conclusion of the hearing, the IJ ruled from the bench. The IJ found the petitioner's testimony generally credible but concluded that the evidence failed to satisfy the petitioner's burden of proof. Specifically, the IJ found that the petitioner had not provided significantly probative evidence that either he or his family members had been targeted for persecution because of their ethnic minority status and, therefore, that the petitioner had failed to establish a nexus between the past harm that he had described and a statutorily protected ground. Similarly, the IJ found that the petitioner had not established that, more likely

than not, he would be persecuted in the future should he return to Guatemala. These findings culminated in a denial of the petitioner's cross-application for withholding of removal.

As an alternative ground for denying relief, the IJ held that even if a nexus existed between the harm and a statutorily protected ground, the end of the civil war in 1996 marked a fundamental change in circumstances. That shift made it unlikely that the petitioner would be persecuted upon his return to Guatemala and, thus, counseled persuasively against withholding of removal.

The petitioner administratively appealed this decision. The BIA affirmed without opinion. This timely petition for judicial review followed.

On a petition for judicial review in an immigration case, we ordinarily focus on the opinion of the BIA. But when, as now, the BIA has not written its own rescript but, rather, has deferred to the IJ's decision, we review the latter decision directly. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

In conducting that tamisage, we review findings of fact (including credibility determinations) under the deferential "substantial evidence" standard. Id. Accordingly, we must leave those findings undisturbed as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Nikijuluw v. Gonzales, 427 F.3d 115, 120

(1st Cir. 2005). We will reverse only if the record is such as would "compel a reasonable factfinder to reach a contrary determination." Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008).

Abstract legal determinations are afforded de novo review. Da Silva v. Ashcroft, 394 F.3d 1, 5 (1st Cir. 2005). Even in that arena, however, we cede some deference to the agency's interpretation of statutes and regulations that fall within its purview. See Chhay, 540 F.3d at 5; see also Chevron U.S.A., Inc., v. Nat'l Res. Def. Council,Inc., 467 U.S. 837, 844 (1984).

This brings us to the particular relief sought in the instant case: withholding of removal. The legal framework that governs applications for withholding of removal is well-settled. To be eligible for that relief, an alien must show either that (i) he has suffered past persecution on account of a statutorily protected ground, thus "creating a rebuttable presumption that he may suffer future persecution" if repatriated, or (ii) that it is "more likely than not that he will be persecuted on account of a protected ground upon his return to his native land." Da Silva, 394 F.3d at 4.

There are five statutorily protected grounds: race, religion, nationality, membership in a particular social group, and political opinion. Romilus, 385 F.3d at 6 (citing 8 C.F.R. § 208.13(b)(1)). Here, the petitioner claims persecution on account

-6-

of ethnicity — a statutorily protected ground.[2]  The IJ rejected this claim on the basis that the petitioner had failed to forge a sufficient nexus between the harm alleged (past and future) and his ethnicity.  As we explain below, that determination is supported by substantial evidence.

The petitioner's evidentiary presentation was characterized by significant gaps.  He testified that his two cousins were shot by soldiers, but he adduced no evidence that the soldiers had targeted them because of their ethnicity.  He stated only that they had run from the soldiers because they "thought" that the soldiers "were going to look for them."

By like token, the petitioner testified to four murders involving his uncle's family — but he admitted that "nobody knew who" had committed these murders or why they had happened.  Without knowing who was responsible for the killings or what had prompted them, it is no more than a guess that a nexus existed between the deaths and a statutorily protected ground.

The petitioner's remaining testimony fares no better. The testimony that his father was conscripted and later died while serving with a civil patrol unit does not adumbrate either that the forced service was anything other than a general obligation imposed

_____

[2] Although Congress has not defined the term "particular social group," case law instructs that the term includes "a[ny] group with some immutable trait (such as an ethnic group)." Elien v. Ashcroft, 364 F.3d 392, 396 (1st Cir. 2004).  Ethnicity therefore qualifies as membership in a particular social group.

-7-

upon citizens in a time of national emergency or that the death was anything other than one more tragic incident in a violent civil war. So, too, the testimony about the attempted burglary; although crime is an unpleasant consequence of life in many modern societies, victimization by a criminal element, without more, is not probative of ethnic persecution.

The conclusion, then, is irresistible. Although an alien may carry the burden of persuasion for withholding of removal by his own testimony, that testimony must be specifically probative. See Chhay, 540 F.3d at 6. In this instance, the petitioner's narrative left too much to speculation and surmise.

Here, moreover, the petitioner was very young at the time of the described events[3] and the accounts of what transpired were conveyed to him by his mother. Thus, even though the petitioner's testimony was thought to be generally credible (i.e., the IJ believed that the described events actually occurred), the IJ

_____

[3] The petitioner asserts that the IJ erred in failing fully to consider his age at the time of his relatives' deaths as a factor bearing upon the existence of past persecution. This assertion is flawed. The petitioner's youth at the time of the events does not excuse a failure to prove an adequate connection between the stated harm and a statutorily protected ground. The case on which the petitioner relies in framing this assertion is inapposite. That case, Jorge-Tzoc v. Gonzales, 435 F.3d 146, 150 (2d Cir. 2006), involved an asylum application, which we evaluate under a separate "well-founded fear of future persecution" standard. See id. Moreover, the principal issue there was whether the petitioner had been persecuted, not whether that persecution was "on account of" a statutorily protected ground. While age may be a factor in determining whether mistreatment rises to the level of persecution, id., that is not the issue here.

-8-

supportably found that this testimony lacked the necessary specificity. Seen in this light, the IJ's conclusion that the testimony did not furnish an adequate nexus between the events and a statutorily protected ground was supported by substantial evidence. See, e.g., Pulisir v. Mukasey, 524 F.3d 302, 309 (1st Cir. 2008); Aguilar-Solis v. INS, 168 F.3d 565, 571 (1st Cir. 1999).

The documentary evidence introduced at the hearing did not fill this void. That evidence is general in nature and, although it bears peripherally on the matters at issue here, it does not serve to tie any of the events that the petitioner described to a statutorily protected ground. Thus, the documentary evidence does not compel a conclusion that the agency erred in finding insufficient proof of a nexus between the harm complained of and a statutorily protected ground.

Once the evidence as a whole is placed in the proper legal perspective, the petitioner's case collapses. At bottom, his claim is that the record compels a conclusion that, more likely than not, he will suffer persecution on the basis of a statutorily protected ground should he be remitted to Guatemala. The IJ's finding that the petitioner failed to prove past persecution erases any possibility of a presumption of future persecution. See Ruiz v. Mukasey, 526 F.3d 31, 37 (1st Cir. 2008); Pulisir, 524 F.3d at 310. This leaves the petitioner dependent upon his ability to show

-9-

a clear probability of future persecution. He cannot do so on this record.

To show a clear probability of future persecution, an alien must demonstrate that it is likely that he will suffer persecution based on one of the statutorily protected grounds should he be repatriated. See 8 C.F.R. § 208.16(b); De Oliveira v. Mukasey, 520 F.3d 78, 79 (1st Cir. 2008).

Here, the IJ deemed the petitioner's testimony to be generally credible — but the test of a clear probability of future persecution is objective, not subjective. INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987).

The petitioner cannot vault over this hurdle. As we have explained, his anecdotal evidence is not probative of persecution due to the absence of any link between the described incidents and a statutorily protected ground. The petitioner's other evidence, which includes several Amnesty International human rights and State Department reports, makes manifest that members of the Mayan Quiche minority continue to face various disadvantages in Guatemala. These disadvantages include discrimination, poverty, and lack of political clout.

Disadvantage, however, is not synonymous with persecution. Although Congress has not explicitly defined "persecution," the case law is instructive. It tells us, for instance, that persecution requires "more than mere discomfiture,

unpleasantness, harassment, or unfair treatment." Nikijuluw, 427 F.3d at 120. Furthermore, persecution "implies some connection to government action or inaction." Id. at 121-22.

Though troubling, the sum total of the disadvantages reflected in the evidence falls well short of compelling a finding that a likelihood of future persecution (as that term has been defined in the case law) exists. Unfair treatment, without more, does not equate with persecution.[4] See, e.g., Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006); Bocova v. Gonzales, 412 F.3d 257, 264 (1st Cir. 2005).

In an effort to blunt the force of this reasoning, the petitioner suggests that he would be exposed to an increased risk of future attacks by gang members in Guatemala because he will be perceived as wealthy. That suggestion fails to establish an objectively reasonable basis for a fear of future persecution premised on a statutorily protected ground. A country-wide risk of victimization through economic terrorism is not the functional equivalent of a statutorily protected ground, and hostile treatment based on economic considerations is not persecution. See, e.g., Ruiz, 526 F.3d at 36-37 (explaining that threats "motivated . . .

---

[4] We note that the rest of the petitioner's family still lives in Guatemala. He presented no evidence that any of them has, since the petitioner's departure from Guatemala, suffered any harm at the hands of either the government or those acting with its connivance or acquiescence. The absence of such evidence is entitled to weight in the decisional calculus. See Nikijuluw, 427 F.3d at 122; Aguilar-Solis, 168 F.3d at 573.

-11-

by greed" lack adequate nexus to any statutorily protected ground); Lopez de Hincapie v. Gonzales, 494 F.3d 213, 220 (1st Cir. 2007) (noting that threats of extortion do not trigger statutory protection).

If more were needed — and we doubt that it is — persecution requires some connection to government. See Nikijuluw, 427 F.3d at 120-21. That connection is missing here. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005) (rejecting "the contention that pervasive non-political criminality in Guatemala constitutes a basis for asylum").

We need go no further.[5] For the reasons discussed above, we deny the petition for review.


**So Ordered**.

---

[5] Because the IJ's principal ground of decision is supported by substantial evidence, we have no occasion to address the IJ's alternative holding that changed circumstances have ameliorated any realistic possibility of future persecution.