**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
# For the First Circuit

---

No. 09-1473

ESVIN ANIBAL REYES BETETA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

---

<u>Stephen M. Born</u> and <u>Mills and Born</u> for petitioner.
<u>Jessica Segall</u>, Trial Attorney, Office of Immigration Litigation, <u>Tony West</u>, Assistant Attorney General, Civil Division, and <u>Leslie McKay</u>, Assistant Director, Office of Immigration Litigation, for respondent.

---

January 21, 2011

---

**HOWARD**, **Circuit Judge**.  Esvin Anibal Reyes Beteta, a Guatemalan national, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) decision to deny his application for withholding of removal.  The petition is denied.

## I.

Reyes entered the United States illegally in approximately May 2002.  Removal proceedings against him were initiated through a Notice to Appear on May 24, 2005, charging him with entering the United States without inspection.  See 8 U.S.C. § 1182(a)(6)(A)(i).  Reyes conceded removability but sought withholding of removal.[1]

Reyes's testimony, which the IJ found credible for purposes of rendering a decision, may be briefly summarized. Reyes, born in October 1983, testified that he was a young child during the Guatemalan civil war in the 1980s.  During that time two of his cousins were murdered by armed men, and an uncle disappeared.  In addition, guerillas took some of his parents' land, placing the family in fear and causing them to work their farmland during the day and sleep in nearby mountains at night.

---

[1]Reyes also sought asylum, which the IJ denied as a matter of law after finding that Reyes's untimely filing was not excused by changed or extraordinary circumstances.  The BIA affirmed that decision, and the petitioner has not pursued his asylum claim here.

Reyes left his village in 1997 and moved to Guatemala City, where he worked as a street vendor for two years. During this time, he was harassed by gang members who would steal his goods and money, but they did not steal from those who paid them off. He later worked in a store in Guatemala City. He returned to his village in December 2001, after gang members attempted to rob the store, threatened him when he defended the store, and later returned to look for him in retaliation for his efforts. He remained at his family's farm until he came to the United States in May 2002.

Reyes testified that since he has been in the United States, family members in Guatemala have told him that they have been threatened and harassed because gang members knew that he was living and working in the United States. He also testified that he fears that he will be killed by gang members or ex-guerillas if he returns to Guatemala because he resisted them while in Guatemala City and because he will be presumed to have money based on his time in the United States. Reyes also testified that there is no safe place for him in Guatemala, as the police do not protect poor people from gang violence. Neither Reyes nor his family ever reported any of their violent interactions to police because, he testified, the police were corrupt and fearful of stopping gang activity.

-3-

At the conclusion of the hearing the IJ denied Reyes's application on the grounds that he had failed to establish either past persecution or a threat of persecution if he returned to Guatemala. The IJ found that Reyes's treatment in Guatemala did not rise to the level of persecution, but was instead the by-product of gang members' motivation to enrich themselves by stealing.

Similarly, the IJ found that Reyes failed to show that he would be unable to avoid similar confrontations upon returning to Guatemala, noting that Reyes was unharmed after he returned from Guatemala City to his parents' farm. Moreover, to the extent that Reyes would, as he feared, be targeted upon his return, the motivation for such hostility would again be monetary gain. The application for withholding of removal was therefore denied, although Reyes's request for voluntary departure was granted.

Reyes appealed to the BIA, which affirmed the IJ's decision on essentially the same grounds relied upon by the IJ. The BIA first found that Reyes had failed to demonstrate that he had been persecuted in the past, both because he did not recall that he suffered any difficulties personally that rose to the level of persecution, and because the theft and extortion that took place in Guatemala City did not constitute persecution based on a protected ground.

The BIA also rejected Reyes's claim that he would be persecuted upon his return to Guatemala based on his status as a Guatemalan returning from the United States. The BIA found that gang members and ex-guerillas would target anyone who might be a potential source of money or valuables, and would not limit their criminal activity to Guatemalans returning from the United States. The BIA also found that Reyes's opposition to the criminal activities of gangs and ex-guerillas is not a form of political opinion protected by immigration laws. This appeal followed.

## II.

When the BIA has adopted an IJ's ruling, but has also examined some of the IJ's conclusions, we review both the BIA's and IJ's opinions. Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). Our scope of review is limited. We appraise the BIA's and IJ's findings of fact under the "substantial evidence" standard, accepting them as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sharari v. Gonzalez, 407 F.3d 467, 473 (1st Cir. 2005). We review the BIA's legal determinations de novo, albeit according "substantial deference to the BIA's interpretations of the underlying statutes and regulations according to administrative law principles." Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009).

To be eligible for withholding of removal, Reyes must show either that he has suffered past persecution due to a statutorily protected ground, thus creating a rebuttable presumption that he may suffer future persecution upon return to Guatemala; or he must demonstrate a clear probability that he will be persecuted on account of a protected ground when he returns. Lopez-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009) (citing Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir 2005)). The statutorily protected grounds are race, religion, nationality, membership in a particular social group, and political opinion. Lopez-Castro, 577 F.3d at 52; 8 C.F.R. § 208.13(b)(1).

To qualify as persecution, a petitioner's experience "must rise above unpleasantness, harassment, and even basic suffering." Decky v. Holder, 587 F.3d 104, 110 (1st Cir. 2009). Moreover, "[p]ersecution, within the context of the immigration statutes, does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. (quoting Kho v. Keisler, 505 F.3d 50, 58 (1st Cir. 2007)).

The record supports the BIA's conclusion regarding both past and future persecution. While the abduction and murder of Reyes's cousins and uncle prior to his arrival in the United States is disturbing, the record supports the BIA's conclusion that Reyes failed to establish that his past hardships rose to the level of

persecution.[2]  It is undisputed that he witnessed none of the violence, does not remember his uncle or cousins, and does not remember hiding in the mountains.  He testified that his family "suspects" that guerillas -- now gang members -- were behind his relatives' deaths.  Thus, even if we were to assume that the killings constituted persecution against Reyes, "[w]ithout knowing who was responsible for the killings or what had prompted them, it is no more than a guess that a nexus existed between the deaths and a statutorily protected ground."  Lopez-Castro, 577 F.3d at 52.

As to the probability of future persecution, we first note that Reyes acknowledged in his testimony that the guerillas are no longer a force in Guatemala.  This blunts most of the impact of his claim of future persecution.  The petitioner asserts that he is part of protected social groups consisting of "Guatemalan street vendors who have resisted gangs," "expatriates returning from working in the United States and are perceived to have wealth," and "Guatemalans whose families have resisted the guerillas."  But the testimony is clear that the gang action was in no way a targeted activity; it was instead a widespread form of organized extortion.  We have held that a "risk of victimization through economic terrorism is not the functional equivalent of a statutorily protected ground . . . ."  Lopez-Castro, 577 F.3d at 54; see also

---

[2]Reyes does not challenge the BIA's conclusion that the theft of his money and goods while he worked as a street vendor did not constitute persecution.

Ruiz v. Mukasey, 526 F.3d 31, 37 (finding that threats motivated by greed do not implicate a protected ground); Lopez de Hincapie v. Gonzalez, 494 F.3d 213, 219-220 (1st Cir. 2007) (common criminals' attempts to extort money not connected to protected ground). Finally, Reyes also testified that the gangs that robbed him in Guatemala City did not follow him back to his parents' farm when he returned there, because he "was already a grown up, not like six years before."  This suggests that at most, while Reyes was an easy target as a youth, adulthood has lessened his vulnerability to the point where future victimization is far from probable.

Against this legal and factual backdrop, we have little trouble affirming the decision of the BIA.  The petition for review is therefore **denied**.[3]

---

[3]Given the basis for our disposition, we need not address Reyes's argument that the BIA improperly employed a "social visibility" test in determining whether any of Reyes's proposed groups constitute a "social group" within the meaning of the immigration laws. See Mendez-Barrera v. Holder, 602 F.3d 21, 25-27 (1st Cir. 2010).  In any event, we have explicitly affirmed the relevance of the social visibility inquiry to social group analysis. Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009).