Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 10-2518

VICTOR BALTAZAR,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Saher J. Macarius and Audrey Botros, on brief for petitioner.
Ada E. Bosque, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Tony West, Assistant Attorney General, Civil Division, and William C. Peachey, Assistant Director, Office of Immigration Litigation, on brief for respondent.

February 24, 2012

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**.  Victor Baltazar is a native and citizen of Guatemala, who entered the United States in January 1993 and overstayed his visa.  In response to a September 14, 2004 Notice to Appear, Baltazar conceded removability and requested relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Baltazar's hearing on the merits took place before the Immigration Judge (IJ) on February 5, 2009.  Baltazar testified that he had been a member of the Civil Defense Patrol (the Patrol) in Guatemala.  Joining the Patrol was mandatory, and groups of members had to patrol during the night, looking for guerillas.  On one occasion, guerillas found his patrol group, and asked what the group was doing.  The group responded that they were afraid of the guerillas, and the guerillas "told [them] to go home, go to sleep."

Baltazar also testified about three other incidents not involving him.  Baltazar's cousin, who was a member of the Patrol, disappeared, along with the cousin's wife.  A neighbor of Baltazar's who was in the Patrol disappeared as well.  Baltazar testified that the guerillas killed another neighbor of his, who was in the Patrol, and left a note saying that this was what happened to people who "snitched" on the guerillas.

Baltazar ultimately left his village for the capital, Guatemala City, because there was a knock on his door one night by unidentified individuals who Baltazar thought were guerillas.

Baltazar was sleeping at the time, and left out the back door after hearing the knocking. While in Guatemala City, some men came looking for Baltazar, but Baltazar's wife did not recognize the men, and they did not explain why they were looking for him. Baltazar also testified that he was a member of a cooperative that provided medical services, and that most of the cooperative's members he knew had been killed.[1] After Baltazar left Guatemala for the United States, he learned from his wife that some men had approached his daughter, asking where he was.

The IJ found that while there were "significant problems" with Baltazar's testimony, and he was "easily confused, and did not remember dates or names," Baltazar nevertheless "testified credibly and to the best of his ability." The IJ found that Baltazar did not establish that he was subject to past persecution, as he was never physically harmed or directly threatened, and had "minimal, if any," contact with the guerrillas. The knock on the door during the night and the unidentified individuals searching for Baltazar were insufficient to establish past persecution, as these individuals were unidentified, and the reason they were looking for Baltazar was not explained. The IJ rejected Baltazar's claim that Baltazar feared persecution based on his political opinion, as he had not expressed his political opinion. The IJ also found that

---

[1] Baltazar makes no claim of persecution based on his membership in this cooperative.

-3-

Baltazar did not establish a well-founded fear of future persecution. Indeed, the 1996 peace accords in Guatemala removed the guerillas as a basis for fearing persecution. This meant he also failed to establish eligibility for withholding of removal. The IJ also rejected the CAT claim.

Baltazar appealed to the Board of Immigration Appeals (BIA), which found no error and dismissed the appeal. The BIA upheld the IJ's finding that Baltazar had not established past persecution, as well as the finding that Baltazar had not met his burden of proving a well-founded fear of persecution. The BIA found that Baltazar had not provided any evidence that he was or would be singled out for persecution by the guerillas. The BIA also agreed with the IJ that conditions in Guatemala had changed as a result of the peace accords. Finally, the BIA rejected the finding, made by the IJ, that the Patrol was a particular social group as defined by the relevant case law. The BIA found that the Patrol was not sufficiently particular and lacked sufficient social visibility to constitute a "particular social group." The BIA affirmed the IJ's findings denying withholding of removal and the CAT claim.

The standards for judicial review and asylum are well established and need not be repeated here. See, e.g., McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011); Morgan v. Holder, 634 F.3d 53, 57-58 (1st Cir. 2011); Nako v.

-4-

Holder, 611 F.3d 45, 48-49 (1st Cir. 2010); Lopez Perez v. Holder, 587 F.3d 456, 460-61 (1st Cir. 2009); López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009); Palma-Mazariegos v. Gonzales, 428 F.3d 30, 34-35 (1st Cir. 2005).

Baltazar claims he was subject to past persecution and has a well-founded fear of future persecution due to (1) his political opinion and (2) his former membership in the Patrol, which he contends is a particular social group within the meaning of the statute.

The IJ properly found that Baltazar failed to establish any political opinion that could serve as the basis for an asylum claim, given that none of Baltazar's testimony articulated any political opinion.

The IJ and BIA did not err in finding that Baltazar failed to establish past persecution on account of his membership in the Patrol. None of Baltazar's testimony established that he was harmed or directly threatened by Guatemalan guerillas at all, much less on account of a statutorily protected ground. On the one occasion where Baltazar directly interacted with guerillas, they simply told him to go home. The fact that unknown individuals knocked at Baltazar's door, and on two other occasions sought him out, does not establish that Baltazar was threatened on account of a statutorily protected ground. See Vilela v. Holder, 620 F.3d 25, 29 (1st Cir. 2010) (the IJ and BIA are free to reject "speculation"

that a particular group of individuals was behind particular events). The disappearance of Baltazar's cousin and neighbor are insufficient to establish past persecution on a statutorily protected ground, given that the record contains no information about why they disappeared. See Reyes Beteta v. Holder, 406 F. App'x 496, 498-99 (1st Cir. 2011). Finally, Baltazar's testimony about the killing of the neighbor who "snitched" did not require a finding of past persecution.

Baltazar similarly failed to meet his burden of proving a well-founded fear of future persecution based on his Patrol membership, given that the only testimony supporting such a fear was that unidentified men on two occasions came looking for him, for unspecified reasons. Moreover, while the State Department country report on Guatemala on which Baltazar relies documents general levels of violence in the country, it does not state that former Patrol members are targeted, or that any guerillas remain active, and thus does not support a well-founded fear of persecution. See Lopez Perez, 587 F.3d at 461. Those reports also make clear that Guatemala's civil war ended in 1996, which supports the IJ and BIA's conclusion that even if it were once reasonable for Baltazar to fear persecution by the guerillas, such a threat no longer exists, at least in the absence of specific evidence to the contrary. Cf. Palma-Mazariegos, 428 F.3d at 36.

Finally, even if Baltazar had a well-founded fear of persecution on account of a statutorily protected ground, and he does not, there is no connection between such a fear and the government, as the IJ found.  This alone defeats Baltazar's asylum claim.  See López-Castro, 577 F.3d at 55.

Because Baltazar did not meet his burden of proving a well-founded fear of persecution,[2] his asylum claim fails, and he necessary failed to meet the higher burden required for withholding of removal.  Pheng v. Holder, 640 F.3d 43, 48 (1st Cir. 2011).

The IJ and BIA also properly found that Baltazar had not established that it was more likely than not he would be tortured upon return to Guatemala, and so rejected the CAT claim.  See 8 C.F.R. § 1208.16(c)(2).

We deny the petition for review.

---

[2]  We need not address the BIA's conclusion that even were such persecution established, membership in the Patrol is not a "particular social group" within the meaning of the statute.  See Recinos-Castillo v. Holder, 444 F. App'x 459, 462-63 (1st Cir. 2011) (explaining that precedent "leave[s] open the possibility that a status as a former civil patrol member . . . could potentially give rise to asylum eligibility" on account of membership in a particular social group or political opinion). This is because, even assuming the Patrol is such a group, Baltazar has failed to establish a well-founded fear of persecution on account of his former membership in the Patrol, as explained above.

-7-