**IMG-146**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1109
_____

ANIL DAVANAND POORAN; S.P.; CARROL SOOKNANAN POORAN,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-021-773, 774, 775)
Immigration Judge:  Honorable R.K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2011
Before:  AMBRO, GREENAWAY, JR. AND GREENBERG, Circuit Judges

(Opinion filed:  July 28, 2011)
_____

OPINION
_____

PER CURIAM

The Poorans (Anil, Carrol, and their daughter, Shenell) petition for review of a

final order of the Board of Immigration Appeals (BIA) denying their motion to reopen

proceedings in which they had been denied asylum, withholding of removal, and relief

under the Convention Against Torture (CAT).  For the reasons discussed below, we will

deny the petition for review.

The Poorans, citizens of Trinidad and Tobago, entered the United States in 2000. In 2006, the Department of Homeland Security charged them with being removable under section 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B), as aliens who after admission as nonimmigrants remained in the United States for a longer time than permitted.

The Poorans conceded that they were removable as charged. However, they applied for asylum, withholding of removal, and CAT relief. They claimed that, while they had not suffered past persecution, they feared future persecution due to their membership in a particular social group, defined as Indo-Trinidadians who are perceived as being wealthy because they have resided in the United States. After a hearing, an Immigration Judge (IJ) denied all relief to the Poorans, who then appealed to the BIA. On June 2, 2010, the BIA rejected their claims. The BIA concluded that while the Poorans had presented evidence that kidnapping was a problem in Trinidad and Tobago, they had not shown that individuals were targeted due to their race or membership in any protected class. Instead, the BIA ruled, individuals were selected for kidnapping based on their ability to pay a ransom, and the characteristic of having wealth, without something more, was insufficient to make up a protected social group under the INA. The BIA also concluded that the Poorans had failed to demonstrate a well-founded fear of future persecution because "the government is attempting to fight the criminal activity, even calling the FBI for assistance, [their] family [has] never been bothered, there has

only been one recent kidnapping in [their] home town, and [they are] not aware of anyone who has been kidnapped after returning from the United States."

On August 31, 2010, the Poorans filed a motion with the BIA seeking both reopening and reconsideration. In the motion, the Poorans claimed that conditions in Trinidad and Tobago had worsened. In support of this claim, they proffered four newspaper articles, an unsworn statement from Ms. Pooran, and a Department of State country report. On December 17, 2010, the BIA denied the motion for reconsideration as untimely, see 8 U.S.C. § 1229a(c)(6)(B), and denied the motion to reopen on the merits.[1] The BIA concluded that the Poorans' newly presented evidence, although emphasizing that Trinidad and Tobago was dangerous, neither was material to their asylum claim nor established a prima facie basis for relief. The Poorans then filed a petition for review in this Court.

As an initial matter, we note that we lack jurisdiction to review the BIA's June 2, 2010 order of removal because the Poorans did not file a timely petition for review of that order. See 8 U.S.C. § 1252(b)(1) (providing for 30-day deadline in which to file petition for review); Stone v. INS, 514 U.S. 386, 395 (1995) (motion to reopen or reconsider does not toll time to file petition for review of BIA's underlying removal order). The government argues that we also lack jurisdiction to review the BIA's December 17, 2010

---

[1]      The Poorans have not challenged the BIA's conclusion that the motion was untimely insofar as it sought reconsideration. Nor have they presented any argument concerning their withholding-of-removal or CAT claim. Accordingly, we will not consider those issues.

3

order in which it refused to reopen the case. However, contrary to the government's argument, we have long recognized that we possess jurisdiction to review orders denying motions to reopen. See, e.g., Zheng v. Att'y Gen., 549 F.3d 260, 268-69 (3d Cir. 2008); see generally Kucana v. Holder, 130 S. Ct. 827, 834 (2010) ("Federal-court review of administrative decisions denying motions to reopen removal proceedings dates back to at least 1916.").

Although we will consider the BIA's order on the merits, our standard of review is narrow: we review the BIA's denial of a motion to reopen for abuse of discretion. See Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005). The BIA's decision is entitled to "broad deference," Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (internal quotation marks omitted), and it "will not be disturbed unless [it is] found to be arbitrary, irrational, or contrary to law," Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (internal quotation marks omitted).

We agree with the government that the Poorans have failed to carry this heavy burden. In support of their motion to reopen, the Poorans presented evidence concerning two brutal attacks on fishermen in Trinidad and Tobago. While they contend that the BIA "ignored" their new evidence, that is not correct; the BIA considered this evidence and determined that it was neither material nor sufficient to establish a prima facie case for relief. See generally Sevoian v. Ashcroft, 290 F.3d 166, 170 (3d Cir. 2002) (holding that these are appropriate bases to deny reopening). More specifically, the BIA held that

4

the Poorans' evidence did not address the fundamental shortcoming in their asylum request — that they had failed to show the required nexus between the risk of persecution caused by the undisputedly high levels of crime in Trinidad and Tobago and their membership in a protected class.

The BIA did not abuse its discretion in reaching this conclusion. As the BIA explained, the Poorans' new evidence reinforced their earlier claim that Trinidad and Tobago is beset by violence. However, the evidence did not suggest that the fishermen were targeted due to their race or connection to the United States. Rather, as the BIA concluded, the evidence does not provide any motive for the robberies beyond criminals' typical desire to acquire wealth or property. Therefore, we discern no error in the BIA's conclusion that this evidence did not advance the Poorans' asylum claim.[2] See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) (explaining that "random street violence" or "ordinary criminal activity" that is "motivated not by animosity" against a particular political position or social group, "but rather by arbitrary hostility or by a desire to reap financial rewards. . . . does not rise to the level of persecution necessary to establish eligibility for asylum"); see also Lopez-Castro v. Holder, 577 F.3d 49, 54-55 (1st Cir.

---

[2] In their appellate brief, the Poorans claim that Mr. Pooran would work as a fisherman if he returned to Trinidad and Tobago. However, during the hearing, Mr. Pooran testified that "were he to return to Trinidad, he would continue working in a factory as a forklift operator." It was reasonable for the BIA to credit this testimony over the conflicting statements that the Poorans have made in their subsequent filings. See, e.g., Shardar v. Att'y Gen., 503 F.3d 308, 313 (3d Cir. 2007).

2009) (explaining that "country-wide risk of victimization through economic terrorism" is insufficient to sustain an asylum claim).

Accordingly, we will deny the petition for review.