**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1477
_____

ANIL POORAN; CARROL POORAN; S. P.,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A200-021-773; -774; -775)
Immigration Judge:  Honorable R. K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2012

Before: FUENTES, HARDIMAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 22, 2012)
_____

OPINION
_____

PER CURIAM

Petitioners, Anil Pooran, his wife, Carrol, and their daughter, S. P., seek review of the

Board of Immigration Appeals' (BIA or Board) order denying their second motion to

reopen proceedings in which they had been denied asylum, withholding of removal, and

relief under the Convention Against Torture (CAT).  For the reasons that follow, we will deny the petition for review.

I.

Petitioners are natives and citizens of Trinidad and Tobago who entered the United States as non-immigrants in 2000.  In 2006, the Department of Homeland Security (DHS) charged them with removal under § 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted.

Petitioners conceded that they were removable as charged, but sought asylum, withholding of removal, and relief under the CAT.  They claimed that they would be persecuted if forced to return to Trinidad and Tobago due to their membership in a social group that they defined as Indo-Trinidadians who are perceived as being wealthy because they have resided in the United States.  After a hearing, an Immigration Judge (IJ) denied relief.   Petitioners sought administrative review, but, by order dated June 2, 2010, the BIA dismissed their appeal.

On August 31, 2010, Petitioners filed a motion with the BIA seeking both reopening and reconsideration on the ground that conditions for Indo-Trinidadians in Trinidad and Tobago—particularly Indo-Trinidadian fishermen like Mr. Pooran—had worsened.  In support of this claim, they proffered: (a) an unsworn statement from Mrs. Pooran in which she claimed that several fishermen from her community had been attacked in August 2010 by sea bandits; (b) four newspaper articles concerning the attacks; and (c) a Department of State country report.  On December 17, 2010, the BIA

denied the motion for reconsideration as untimely, see INA § 240(c)(6)(B) [8 U.S.C. § 1229a(c)(6)(B)], and denied the motion to reopen because the newly presented evidence did not demonstrate a change in circumstances that materially affected Petitioners' eligibility for relief, see id. § 208(a)(2)(D) [8 U.S.C.§ 1158(a)(2)(D)], and because Petitioners had failed to show prima facie eligibility for relief, see Guo v. Ashcroft, 386 F.3d 556, 563 (3d Cir. 2004). On July 28, 2011, this Court denied the Petitioners' petition for review. Pooran v. Att'y Gen., 440 F. App'x 112 (3d Cir. 2011) (per curiam).

On November 14, 2011, Petitioners filed a second motion to reopen with the BIA in which they claimed that circumstances had again changed. In particular, Petitioners alleged that, after this Court had issued its decision denying their petition for review, *Newsday*, a newspaper in Trinidad and Tobago, picked up the story. According to Petitioners, criminals in Trinidad and Tobago would likely learn of the article and retaliate against them. Petitioners claimed that the reporter who authored the article had in fact already attempted to contact S. P. through a social networking site. In support of their motion, Petitioners submitted a copy of the *Newsday* article and a print-out of the reporter's attempt to contact S. P. on Facebook. Petitioners also resubmitted the same four newspaper articles that they had submitted with their first motion to reopen, and the same statement that Mrs. Pooran had created in 2010. Petitioners also submitted a more recent country report. Based on this evidence, Petitioners argued that they should be allowed to file a new asylum application under INA §208(a)(2)(D) [8 U.S.C. § 1158(a)(2)(D)].

The BIA denied the motion, explaining that publication of the *Newsday* article did not constitute a change in country conditions or circumstances material to Petitioners' eligibility for asylum. The Board found that Petitioners had not presented sufficient evidence supporting their claim that criminals would read the article and then single them out for persecution. The Board further found that, to the extent that Petitioners had resubmitted evidence purporting to show that Indo-Trinidadian fishermen had been the target of violence, it had already found this evidence insufficient in its prior decision, and the State Department's more recent report was substantially similar to the one it had previously considered. Petitioners now seek review of the BIA's order.

## II.

We have jurisdiction over this petition for review pursuant to INA § 242(a) [8 U.S.C. § 1252(a)]. Because "[m]otions to reopen immigration proceedings are viewed with strong disfavor, . . . we review the BIA's decision to deny reopening for abuse of discretion, mindful of the broad deference that the Supreme Court would have us afford." Zheng v. Gonzales, 422 F.3d 98, 106 (3d Cir. 2005) (internal quotation marks and citation omitted). Under this standard, we may reverse the agency's decision only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).

An alien generally may file only one motion to reopen and must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). The time and number requirements do not apply to motions that rely on evidence of "changed country conditions," INA § 240(c)(7)(C)(ii) [8

4

U.S.C. § 1229a(c)(7)(C)(ii)], or "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."  8 C.F.R. § 1003.2(c)(3)(ii).

Petitioners first challenge the BIA's determination that the *Newsday* article did not establish changed country conditions material to their asylum claim.  Specifically, Petitioners argue that the Board erred in rejecting their claim that they would be singled out and targeted for harm as a result of the article.  According to Petitioners, due to the widespread distribution of *Newsday*, "[t]he criminals who have been attacking Indo-Trinidadian fishermen, and whose actions Petitioners already fear, are likely to retaliate against [them] . . . [because they] have spoken negatively and in great detail about these criminals and their terrorizing and murdering practices against Indo-Trinidadian fishermen."  (Br. 16.)  Petitioners claim that the fact that the *Newsday* reporter has already attempted to contact S. P. demonstrates that they will be singled out for persecution.

We disagree.  As the BIA explained, publication of the *Newsday* article does not sufficiently increase the likelihood that Petitioners will be targeted for persecution if forced to return to Trinidad and Tobago.  Petitioners' contention that the criminals described in the newspaper will learn of the article and single them out for harm is purely speculative.  We also agree with the BIA that the fact that a reporter located S. P. on a

5

social networking website does not suggest that criminals could locate Petitioners in person with the same ease.[1]

Petitioners also challenge the BIA's determination that the evidence they submitted concerning the August 2010 attacks against Indo-Trinidadian fishermen did not advance their asylum claim. The BIA did not abuse its discretion in reaching this conclusion. While Petitioners' new evidence reinforces their claim that Trinidad and Tobago is beset with violence, it does not suggest that the fishermen were targeted due to their race or connection to the United States. See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) (explaining that "random street violence" or "ordinary criminal activity" that is "motivated not by animosity" against a particular political position or social group, "but rather by arbitrary hostility or by a desire to reap financial rewards . . . does not rise to the level of persecution necessary to establish eligibility for asylum"); see also Lopez-Castro v. Holder, 577 F.3d 49, 54-55 (1st Cir. 2009) (explaining that "country-wide risk of victimization through economic terrorism" is insufficient to sustain an asylum claim).

Accordingly, we see no basis for concluding that the Board abused its discretion in determining that Petitioners did not qualify for the changed country conditions exception under INA § 240(c)(7)(C)(ii) [8 U.S.C. § 1229a(c)(7)(C)(ii)].

## III.

For the foregoing reasons, the petition for review will be denied.

---

[1] To the extent that Petitioners contend that the BIA "summarily dismissed" their claim without explanation, we disagree. The BIA provided sufficient explanation for judicial review. See Sevoian, 290 F.3d at 178 ("The Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the

6

movant's claims.") (internal quotation marks and citation omitted).