# United States Court of Appeals
## For the First Circuit

No. 11-1214

ERIKA DE CARVALHO-FROIS ET AL.,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Boudin, Selya and Howard,
Circuit Judges.

Carlos E. Estrada on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Anthony W. Norwood, Senior Litigation Counsel, and Lisa Morinelli, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

January 26, 2012

**SELYA, Circuit Judge**.   The lead petitioner, Erika de Carvalho-Frois, is a Brazilian national.[1]   She seeks judicial review of a final order of the Board of Immigration Appeals (BIA), which upheld a denial of asylum by an immigration judge (IJ). After careful consideration, we deny the petition for judicial review.

The facts are not complicated.   The petitioner entered the United States illegally on December 31, 2006.   During her entry, she was apprehended by the Department of Homeland Security (DHS).   About two months later, the DHS initiated removal proceedings on the ground that the petitioner had entered the United States without a valid entry document.   See 8 U.S.C. § 1182(a)(7)(A)(i)(I).   The petitioner conceded removability and cross-applied for asylum and other relief.[2]

In her asylum application and in her testimony before the IJ, the petitioner related that she had repaired to the United

---

[1] The lead petitioner's minor son, Jonathon Carvalho-Albino Frois, is a derivative beneficiary of her asylum application (and, thus, is also a petitioner).   See 8 U.S.C. § 1158(b)(3)(A).   For ease in exposition, we discuss the case as if the lead petitioner were the only affected party.   Our decision is, of course, binding upon both petitioners.

[2] In addition to asylum, her original application sought withholding of removal and protection under the United Nations Convention Against Torture (CAT).   The agency denied that relief. In this court, the petitioner contests only the denial of her asylum application.   Consequently, we deem any arguments related to either her withholding of removal or CAT claims abandoned.   See Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005).

States after witnessing two men fleeing from the scene of a neighbor's murder. Specifically, she said that on August 16, 2006, she heard gunshots while at home and saw two men leaving the neighbor's abode. As they left, one of them told her, "I know you saw everything. You're in danger. Be very careful." Later that evening, police officers found the neighbor's bullet-riddled body.

The petitioner took her son to her mother's house for the night. Upon returning home the next day, she received a telephone call, presumably from one of the assailants. The voice on the other end of the line said: "We know where, where you live. We know you. Please do not talk to the police about this, because if you do we will kill you." Following this conversation, the petitioner again retreated to her mother's house. She never returned home.

Approximately three weeks later, while the petitioner was bringing her son to school, she spotted the man who had threatened her on the night of the murder. She did not exchange words with him. Roughly four months after this encounter, she departed Brazil for the United States.

The petitioner testified that she never reported these incidents to the police because, in her view, the police in Brazil are corrupt and often allow criminals to kill witnesses. In an effort to support this supposition, she submitted various country-conditions reports, human rights reports, and a newspaper article.

The petitioner further testified that she feared that she and her son would be killed either by the murderers or by the police should they return to Brazil. She admitted, however, that she had never been threatened by any police officer.

The IJ denied the petitioner's asylum application. She credited the petitioner's testimony regarding the threats,[3] but concluded that the petitioner had failed to establish either past persecution or a well-founded fear of future persecution.

The IJ deemed the evidence insufficient to show past persecution for three reasons. First, the threats were not serious enough to qualify as persecution. Second, the petitioner's fear was unconnected to any statutorily protected ground. Although she claimed "social group" membership, her professed social group — witnesses to a serious crime whom the government is unable or unwilling to protect — was not legally cognizable. Third, the petitioner did not establish that the Brazilian government was either unable or unwilling to protect her from the harm that she feared.

---

[3] Nevertheless, the IJ stated that there was an "extraordinarily troubling disconnect" between the petitioner's testimony and two of the exhibits. Shortly after her arrival, the petitioner stated in an interview with a border patrol agent and reaffirmed in a separate sworn statement that her purpose for entering the United States was to find work. When asked if she might be harmed upon returning to Brazil, the petitioner answered unqualifiedly in the negative.

The IJ likewise determined that the petitioner had no well-founded fear of future persecution. She mentioned some of the same reasons that she had recounted in rejecting the claim of past persecution. Additionally, the IJ determined that the petitioner's stated fear of returning to Brazil was objectively unreasonable because the petitioner had not established that the Brazilian authorities could not or would not protect her if she returned. In all events, the petitioner could relocate within Brazil to avoid being harmed by the purported murderers.

The petitioner unsuccessfully appealed the IJ's decision. The BIA concluded that the threats alleged by the petitioner did not constitute "mental, psychological, emotional [or] physical abuse amounting to persecution," that there was no nexus between the described threats and government action or inaction, and that the petitioner's claimed social group lacked social visibility (and, thus, was not legally cognizable). This timely petition for judicial review followed.

We review the factual findings underpinning the BIA's denial of an asylum application through the prism of the substantial evidence rubric. Morgan v. Holder, 634 F.3d 53, 56-57 (1st Cir. 2011). Under that rubric, the agency's findings must be upheld so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Absent an error of

law, we will reject the agency's findings only when the record compels a conclusion contrary to that reached by the agency. Morgan, 634 F.3d at 57; Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009). Additionally, we review legal questions de novo, albeit with some deference to the BIA's reasonable interpretations of the statutes and regulations that fall within its purview. Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010).

To be eligible for asylum, an alien must show that "she is unable or unwilling to return to her homeland 'because of [past] persecution or a well-founded fear of [future] persecution on account of'" one of five statutorily enumerated grounds. Id. at 25 (quoting 8 U.S.C. § 1101(a)(42)(A)) (alterations in original). "Persecution" is a term of art in immigration law. Lopez Perez, 587 F.3d at 461. The elements of persecution — past or future — are identical: the alien must demonstrate a certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to one of the statutorily protected grounds. Morgan, 634 F.3d at 57; Lopez Perez, 587 F.3d at 461-62.

If an alien establishes past persecution, a rebuttable presumption of a well-founded fear of future persecution arises. Mendez-Barrera, 602 F.3d at 25; Lopez Perez, 587 F.3d at 461. In the absence of proof of past persecution, an alien still can establish a well-founded fear of future persecution by

demonstrating both that she genuinely fears future persecution and that her fears are objectively reasonable. Morgan, 634 F.3d at 57-58; Mendez-Barrera, 602 F.3d at 25.

In the case at hand, the petitioner complains that the BIA erred in affirming the IJ's determination that she failed to demonstrate either past persecution or a well-founded fear of future persecution. We explain briefly why the petitioner's plaint fails.

An inability to establish any one of the three elements of persecution will result in a denial of her asylum application. See Morgan, 634 F.3d at 59; Lopez Perez, 587 F.3d at 462. Here, the IJ and the BIA found the petitioner's claims of persecution (both past and future) wanting in three fundamental respects. If the agency's findings on any one of those determinations are supportable, the petitioner cannot prevail. For simplicity's sake, then, we proceed directly to the weakest point in the petitioner's asseveratory array: the agency's determination that the petitioner's proposed social group was not cognizable.

To show persecution "on account of . . . membership in a particular social group," 8 U.S.C. § 1101(a)(42)(A), an alien must establish that the putative social group is legally cognizable. Mendez-Barrera, 602 F.3d at 25. A cognizable social group is one whose members share "a common, immutable characteristic that makes the group socially visible and sufficiently particular." Id. For

a group to be socially visible, "it must be generally recognized in the community as a cohesive group." Id. at 26; see Faye v. Holder, 580 F.3d 37, 41-42 (1st Cir. 2009).

The petitioner asserts that her claimed social group – witnesses to a serious crime whom the Brazilian government is unwilling or unable to protect – is socially visible. In this regard, she relies heavily on the fact that she had been identified by the murderers. Building on this foundation, she speculates that the murderers' entire gang (which assumes without a shred of proof that the murderers belonged to a gang) and complicit Brazilian police officers knew that she had witnessed the two men flee the murder scene. Because her status as a witness to a serious crime was known to those seeking to do her harm, her thesis runs, her claimed social group was socially visible.

This line of argument mistakes the proper inquiry. In determining whether a purported social group is socially visible, the relevant question is "whether the social group is visible in the society, not whether the alien herself is visible to the alleged persecutors." Mendez-Barrera, 602 F.3d at 27. The fact that the petitioner was known by a select few to have witnessed a crime tells us nothing about whether the putative social group was recognizable to any extent by the community. Cf. Scatambuli v. Holder, 558 F.3d 53, 60 (1st Cir. 2009) (commenting, in the course of upholding a finding that a claimed social group lacked social

visibility, that "the universe of those who knew of the petitioners' identity as informants was quite small [and] the petitioners were not particularly visible.").

Here, moreover, the visibility of the putative social group is deficient in yet another respect; the petitioner has pointed to no common and immutable characteristic that renders members of the group socially visible in Brazil. This, in itself, is a fatal flaw. See Mendez-Barrera, 602 F.3d at 26-27. Because we discern no feature of the group that would enable the community readily to differentiate witnesses to a serious crime from the Brazilian populace as a whole, the claimed group is simply too amorphous to satisfy the requirements for social visibility. See id.

Our holding today is consistent with the case law in this circuit: the claimed social group of witnesses to a serious crime whom the government is unable or unwilling to protect is not appreciably more visible than other proposed groups previously found not to be cognizable. See, e.g., id. (upholding agency's determination that the proposed group of "young women recruited by gang members who resist such recruitment" is not socially visible); Faye, 580 F.3d at 41-42 (upholding agency's determination that proposed group of women who had a child out of wedlock is not socially visible); Scatambuli, 558 F.3d at 60-61 (upholding agency's determination that proposed group of informants is not

socially visible).  We therefore conclude that the BIA did not err in finding that the petitioner's professed social group was not legally cognizable.

This gap in the petitioner's proof dooms her claims of past persecution and a well-founded fear of future persecution alike.  Each formulation requires that the persecution be perpetrated "on account of" one of the statutorily enumerated grounds.  8 U.S.C. § 1101(a)(42)(A).  The petitioner chose to premise both her claim of past persecution and her claim of well-founded fear of future persecution on her membership in a group that lacks the requisite social visibility.  Consequently, both claims topple.

We need go no further.[4]  The petitioner's failure to satisfy an essential element of the three-part showing needed to ground a finding of persecution requires us to deny her petition for judicial review.

**The petition for judicial review is denied**.

---

[4] Because we find unassailable the agency's conclusion that the petitioner's claimed social group was not legally cognizable, we need not reach the issues of (i) whether the threats made were sufficiently serious to rise to the level of persecution, (ii) whether there was a sufficient nexus between the harm the petitioner experienced and government action or inaction, or (iii) whether the petitioner can safely relocate within Brazil.