# United States Court of Appeals
## For the First Circuit

No. 11-1737

MARIA AYALA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Thompson, Circuit Judges.

Stephen M. Born and Mills and Born, Attorneys at Law on brief for petitioner.

Tony West, Assistant Attorney General, Civil Division, Ernesto H. Molina, Jr., Assistant Director, and Joanna L. Watson, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

June 27, 2012

**THOMPSON, Circuit Judge.** Maria Ayala, a Guatemalan native, petitions for review of a final removal order. She argues that the immigration courts committed several legal errors when they denied her asylum petition. We agree with the immigration courts, however, that Ayala is not eligible for asylum because she has proven neither past persecution nor any likelihood of future persecution on account of a protected ground. These conclusions sink Ayala's asylum claim and lead us to deny her review petition.

We take the facts mostly from Ayala's testimony before the immigration judge (IJ), who found her wholly credible, supplementing with just a touch of history for context.

Ayala was born in 1957, about three weeks after Guatemala's president Carlos Castillo Armas was assassinated. The decades that followed were tumultuous ones for the country, with guerilla violence gradually becoming more and more common until peace finally arrived in 1996.

Ayala's family was not immune from that violence. In 1981, guerilla fighters executed her cousin Ugo Castillo for refusing to support them. In 1983, guerillas first threatened, then kidnapped, and eventually killed another of her cousins, Oscar Castillo. Later in the 1980s, guerillas tied up her grandparents, robbed them, and threatened to kill them; shaken, both died soon thereafter. In 1993, Ayala fled to the United States, leaving behind two children, ages fourteen and ten.

-2-

Ayala arrived in California on April 21, 1993. A few months later, she filed an affirmative petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). At some point she came to make her home in Providence, Rhode Island.

Then in September 2006, the Department of Homeland Security issued Ayala a Notice to Appear (NTA) charging her with removability because she had not been admitted into the United States. Ayala conceded removability but pressed her affirmative claims for relief. After an evidentiary hearing, the IJ found Ayala credible but denied her relief because she could not prove past persecution, establish a reasonable fear of future persecution on account of a protected ground, or meet the more difficult tests for withholding of removal and CAT protection. The Board of Immigration Appeals (BIA) affirmed, and Ayala has appealed to us, raising only asylum-related issues and abandoning her withholding-of-removal and CAT-protection claims.

We review immigration courts' "determinations of statutory eligibility for relief from deportation" for substantial evidence, meaning the decisions are conclusive as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Hasan v. Holder, 673 F.3d 26, 33 (1st Cir. 2012) (internal quotation marks omitted). We review

legal questions de novo.  Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003).  And we have jurisdiction under 8 U.S.C. § 1252.

We begin with a brief outline of asylum law.[1]  A petitioner may be eligible for asylum if she can demonstrate that she is a refugee.  8 U.S.C. § 1158(b)(1)(A).  A refugee is a person who has a well-founded fear that, if she is returned to her home country, she will suffer persecution on account of a legally protected ground.  Id. § 1101(a)(42).  Proof of past persecution creates a presumption of future persecution that the government may rebut.  8 C.F.R. § 1208.13(b)(1).  Persecution normally involves "severe mistreatment at the hands of [a petitioner's] own government," but it may also arise where "non-governmental actors . . . are in league with the government or are not controllable by the government."  Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005).  That should provide sufficient context for today's purposes; we move on to Ayala's arguments.

Ayala first claims that the guerillas' attacks on her cousins and grandparents constitute past persecution.  But to constitute past persecution, the guerillas' acts must have been "on account of" some legally protected ground.  Ayala has not squarely addressed this requirement.  The closest she comes is claiming the

---

[1] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, amended some provisions of asylum law; the parties agree that these amendments do not apply here because Ayala's petition predates the Act.

existence of a legally protected "particular social group" -- "a family that opposed guerilla warriors" -- that would presumably encompass her cousins, her grandparents, and Ayala herself.  But there is no evidence to support the claim that guerillas targeted Ayala's family members on account of their membership in the family.  And the absence of any such evidence defeats her claim of past persecution on account of a legally protected ground.  See Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007) (it is the petitioner's burden "to furnish some credible evidence of the motivation underlying" alleged persecution).

Essentially the same analysis disposes of Ayala's future-persecution arguments.  For Ayala to be a refugee eligible for asylum, she must demonstrate that the persecution she fears will be on account of a legally protected ground.  Ayala claims she will be persecuted on account of her membership in "a family that opposed guerilla warriors," but we have already said there is no evidence to support this claim.  She also claims membership in the "particular social group" of "perceived . . . wealthy Guatemalan[s] returning after having spent time abroad."  But we have consistently rejected asylum claims based on perceived wealth because of a petitioner's connections to the United States, and we are bound by this precedent.  Lopez Perez v. Holder, 587 F.3d 456, 463 (1st Cir. 2009) (holding that a Guatemalan petitioner's fear of "being targeted by criminal elements as an emigré from the United

States" was "a non-factor in analyzing the prospect of future persecution"); López Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009) (petitioner's claim of exposure to "future attacks by gang members in Guatemala because he will be perceived as wealthy . . . fails to establish an objectively reasonable basis for a fear of future persecution premised on a statutorily protected ground"); Hincapie, 494 F.3d at 219 (threats "prompted by a desire to extort money" are not "connected to a statutorily protected ground" for asylum purposes). We therefore hold that Ayala has not shown any likelihood of future persecution on account of her membership in a protected group.

There is one final argument on the table: Ayala says that even if she has no well-founded fear of persecution on account of a protected ground, she may still be entitled to relief under 8 C.F.R. § 208.13(b)(1)(iii)(B). That code provision allows for asylum where "there is a reasonable possibility that [a petitioner] may suffer other serious harm upon removal to [her home] country." Neither party addresses the argument in any detail, and we can dispatch it quickly: § 208.13(b)(1)(iii)(B) applies only to "an applicant described in paragraph (b)(1)(i) of this section"; § 208.13(b)(1)(i) describes an applicant "found to be a refugee on the basis of past persecution" who is nevertheless ineligible for asylum due, e.g., to changed country conditions; and we have said

there was no past persecution here. By its terms, § 208.13(b)(1)(iii)(B) does not apply to Ayala.

Ayala has not established that she suffered past persecution or that she has a well-established fear of future persecution on account of a protected ground; she is therefore ineligible for asylum. Accordingly, we **deny** the petition for review and **affirm** the final order of removal.