# United States Court of Appeals
## For the First Circuit

No. 17-1285

BLANCA LIDIA MARTÍNEZ-PÉREZ,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Kayatta,
<u>Circuit Judges</u>.

<u>Carlos E. Estrada</u>, Ashley M. Edens and Estrada Law Office, on brief for petitioner.
<u>Michael C. Heyse</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, <u>Chad A. Readler</u>, Acting Assistant Attorney General, Civil Division, and <u>May Jane Candaux</u>, Assistant Director, on brief for respondent.

July 24, 2018

**THOMPSON**, **Circuit Judge**.    Petitioner Blanca Lidia Martínez-Pérez (Martínez-Pérez) seeks judicial review of a decision of the Board of Immigration Appeals (BIA) affirming the denial of her applications for asylum, withholding of removal, and withholding of removal under the Convention Against Torture (CAT). Martínez-Pérez argues that the BIA erred by affirming the Immigration Judge's (IJ) conclusion that she did not qualify for asylum, withholding of removal, or any other basis for relief based on her mistreatment in Honduras because of her Afro-Honduran race and physical disability caused by polio, and furthermore that the IJ violated her due process rights.    Before looking at the challenges Martínez-Pérez has raised here, we will run through the circumstances of Martínez-Pérez's journey to the United States, her life in Honduras and the circumstances that led her to come to the United States, and the prior proceedings that brought her before this court.[1]

## A. BACKGROUND

## 1. Facts and Circumstances

Martínez-Pérez was born in 1976 in Honduras.  By the age of one she was diagnosed with polio, after which her mother gave Martínez-Pérez to her uncle, who in turn left her at an orphanage

---

[1] These facts are drawn from the administrative record, including Martínez-Pérez's hearing testimony, which the IJ found credible.

in Tegucigalpa, the capital of Honduras. Because of her childhood polio, Martínez-Pérez walks with a limp. She was harassed by staff and other children in the orphanage throughout her entire childhood, and was sometimes called names relating to her disability. She dropped out of school after the sixth grade.

Martínez-Pérez ultimately left the orphanage at age eighteen and moved to a town called Sambo Creek, about six hours north of Tegucigalpa. Tegucigalpa and Sambo Creek are the only two places Martínez-Pérez lived in Honduras. As an adult, Martínez-Pérez continued to experience general mistreatment based on her disability and race. She recalled being verbally harassed by strangers on the street. She also had difficulty finding a job, and supported herself by working as a babysitter for a friend. After three incidents in 2014 in which she heard someone threaten her life, had a bottle thrown at her, and survived a home invasion, all of which we'll get to later, Martínez-Pérez decided to leave Honduras and travel to the United States.

Martínez-Pérez entered the United States on foot, having broken her foot in transit, near Brownsville, Texas, on or about June 7, 2014. While in custody, she received medical attention for her foot and an asylum officer conducted a credible fear interview with her for her asylum claim, finding that there was a significant possibility that she could prevail on an asylum claim at a full hearing. She remained in custody and was transferred to

Louisiana, where she was served with a notice to appear on July 23, 2014, which began the removal proceedings against her. She was then released on bond in August 2014. Between 2014 and 2016, when Martínez-Pérez ultimately was able to secure counsel and have a hearing on her application for asylum, the case was continued multiple times and ultimately venue was transferred from Louisiana to Boston.[2]

## 2. The IJ Hearing

At her asylum hearing before the IJ, Martínez-Pérez's claims for (i) asylum, (ii) withholding of removal, and (iii) withholding of removal under the CAT were principally supported by her testimony about three experiences of harassment or threat of assault that she argued were past persecution, and thus also supported her well-founded fear of future persecution if she returned to Honduras.[3] First, Martínez-Pérez described an incident in February 2014 when a stranger broke into her room at night. The intruder tried to attack her but ran away when she screamed.

---

[2] Not at issue in this appeal, counsel for Martínez-Pérez before the BIA represented that there were several continuances "due to the Immigration Judge's scheduling issues," before ultimately venue was transferred from New Orleans to Boston on April 22, 2015.

[3] Martínez-Pérez also submitted several "country condition" documents as exhibits at her asylum hearing that described disabled people and people of Afro-Honduran descent as subject to discrimination, especially in employment, housing, and public services access, as well as the overall poor state of healthcare access and quality in Honduras.

She believes the intruder targeted her and wanted to sexually assault her because of her disability. The intruder never spoke to her. Because she was afraid that the intruder would come back, or hurt her when released from custody, she did not file a complaint with the police.

The last two incidents relate to a single person, a man named Charlie who harassed her on multiple occasions in Sambo Creek. She encountered Charlie once a month over the course of a year. For the most part, Charlie made offensive comments about Martínez-Pérez's limp. But one time, Charlie escalated by threatening to throw her off a bridge, but said he wouldn't because she was carrying her friend's baby. Another time in April 2014, he physically threatened her, throwing a bottle at her that hit her feet and calling her "renca," which means "gimp." Martínez-Pérez described this as the reason she left Honduras, leaving for the United States a few weeks later.

At the end of the hearing, the IJ issued an oral decision denying Martínez-Pérez's asylum claim. Despite finding her testimony "credible" and "truthful," and her case "extremely sympathetic," the IJ found that Martínez-Pérez had failed to carry her burden in proving either past persecution or a well-founded fear of future persecution. In particular, the IJ found that the three more serious instances of threats and physical danger Martínez-Pérez testified about did not rise to the level of past

persecution. As for well-founded fear of future persecution, though the IJ found her credible, and thus credited her subjective fear in returning to Honduras, the IJ found that the threats she faced were from a single person, and therefore did not "present a likelihood of persecution if she returned." Under the same reasoning, the IJ rejected her claims for withholding of removal and protection under the CAT.

### 3. Appeal to BIA

Martínez-Pérez then appealed to the BIA, which affirmed the IJ's decision to deny her claims for asylum and withholding of removal. The BIA agreed with the IJ that the evidence Martínez-Pérez presented was not serious enough to "rise[] to the level of past persecution." For the same reason, the BIA also agreed with the IJ's conclusion that the mistreatment and harassment she faced did not rise to the level of a well-founded fear of future persecution.[4] Because she could not satisfy this lesser asylum burden, the BIA agreed that it necessarily followed that she had not satisfied the higher burden for withholding of removal.

This petition for judicial review ensued. Jurisdiction of this court is pursuant to 8 U.S.C. § 1252.

---

[4] Neither the IJ nor the BIA reached other elements of past or future persecution in denying her claims.

- 6 -

## B. DISCUSSION

On appeal, Martínez-Pérez makes three arguments. First, she contends that the IJ and BIA erred by failing to find that she had suffered past persecution, thus entitling her to a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1). Second, Martínez-Pérez argues that the IJ and BIA erred in denying her claim for humanitarian asylum based on the same body of evidence she says should have sustained her past persecution claim. Third, she argues that the IJ failed to consider all the evidence at her hearing and applied inapposite case law in her decision, thus violating Martínez-Pérez's due process rights. We discuss each one in turn.

### 1. Standard of Review

When the BIA "adopts portions of the IJ's findings while adding its own gloss," as it did here, "we review both the IJ's and the BIA's decisions as a unit." Paiz-Morales v. Lynch, 795 F.3d 238, 242 (1st Cir. 2015) (internal quotation marks omitted) (quoting Renaut v. Lynch, 791 F.3d 163, 166 (1st Cir. 2015)). We review the findings of fact supporting the BIA's denial of an asylum application for substantial evidence, meaning we accept the findings "as long as they are supported by reasonable, substantial and probative evidence on the record considered as a whole." Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014) (internal quotation marks and citation omitted). We will reject the BIA's findings

only when the record compels a contrary outcome. Carvalho-Frois v. Holder, 667 F.3d 69, 72 (1st Cir. 2012); Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).

## 2. Asylum

To qualify for asylum, an applicant must "'demonstrate a well-founded fear of persecution on one of five protected grounds' -- race, religion, nationality, political opinion or membership in a particular social group." Paiz-Morales, 795 F.3d at 243 (quoting Singh, 750 F.3d at 86). To show that the circumstances the applicant endured constitute persecution for purposes of asylum relief, she must show "a certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to one of the statutorily protected grounds." Carvalho-Frois, 667 F.3d at 72 (citation omitted).

If the applicant establishes past persecution, there is "a rebuttable presumption of a well-founded fear of future persecution." Id. (citation omitted). Without past persecution, the applicant can still show a well-founded fear of future persecution by showing that "she genuinely fears future persecution and that her fears are objectively reasonable." Id. (citation omitted). But in either case, "[a]n inability to establish any one of the three elements of persecution will result

- 8 -

in a denial of [the] asylum application."  Id. at 73 (citation omitted).

In this case, Martínez-Pérez argues that the BIA erred in affirming the IJ's conclusion that she had not demonstrated either past persecution or a well-founded fear of persecution. The BIA and IJ rejected Martínez-Pérez's past and future persecution arguments because the harassment she endured in Honduras did not rise to the level of persecution.  While we too find petitioner's plight extremely sympathetic, we must nevertheless agree with the BIA's and IJ's assessments.

### a. Past Persecution

An applicant for asylum "'bears a heavy burden,' and faces a 'daunting task' in establishing subjection to past persecution."  Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013) (internal quotation marks omitted) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)).  To show past persecution, "the discriminatory experiences must have reached a fairly high threshold of seriousness, as well as [occurred with] some regularity and frequency."  Alibeaj, 469 F.3d at 191.  Thus, the severity and frequency of the harassment identified by the applicant are intertwined factors that bear on "the nature and extent of an applicant's injuries . . . ."  Vasili, 732 F.3d at 89.  In other words, "persecution requires 'more than mere discomfiture, unpleasantness, harassment, or unfair treatment' and

- 9 -

'implies some connection to government action or inaction.'" Id. at 90 (quoting López-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009)). We see more than substantial evidence for the BIA and IJ's conclusions that the incidents Martínez-Pérez identified were not serious harm rising to the level of past persecution.

The three incidents Martínez-Pérez pointed to as evidence of past persecution--the single death threat and bottle-throw from Charlie, and the home invasion by an unknown assailant--while undoubtedly scary, do not compel us to find they were serious enough to constitute persecution.[5] We have upheld BIA decisions concluding that even more frequent and more serious experiences than the ones endured here were insufficient to show

---

[5] While Martínez-Pérez also argues that the BIA and IJ erred by failing to explicitly consider the country-conditions evidence she submitted, we need not consider that evidence in the mix of Martínez-Pérez's persecution argument for three reasons. First, Martínez-Pérez develops no specific arguments about what alleged persecution these country conditions would support, or why, and instead cites generally to the entire seventy-four pages of country-condition evidence. Without more, such an argument is insufficiently developed, and thus waived. See United States v. Sevilla-Oyola, 770 F.3d 1, 19-20 (1st Cir. 2014). Second, even if it were not waived, "each piece of evidence need not be discussed in a decision" in order to satisfy our review. Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000). And third, even if we were to peer into the country conditions, they do not relate in any way to the specific instances of harassment or assault Martínez-Pérez identified. Instead, they discuss shortcomings in the provision of healthcare or other services and enforcement of anti-discrimination laws in Honduras, which on their own indicate no more than a "general climate of discrimination" and without more do not suffice to show persecution. Attia v. Gonzales, 477 F.3d 21, 24 (1st Cir. 2007).

past persecution.[6]   See Attia, 477 F.3d at 23-24 (finding no persecution where the applicant was beaten twice over a nine year period and experienced a "general climate of discrimination"); Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (finding no persecution based on seven arrests accompanied by short periods of detention and physical beatings over the span of two years); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (finding no persecution based on two death threats and a beating resulting in loss of consciousness and hospitalization).   And while more physical incidents such as arrest or assault are not necessary to

---

[6] Martínez-Pérez alternatively argues, by comparison, that domestic violence victims have shown persecution in support of an asylum claim based on the violence or threats of a single tormentor, e.g., a spouse.  This argument does not factor into our review of the BIA's decision for two reasons.  First, this theory was not raised before the IJ or BIA, and is therefore waived due to lack of administrative exhaustion.  See Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007).  Second, Martínez-Pérez's argument relies on misconstruing Matter of A-R-C-G-, 26 I. & N. Dec. 388 (BIA 2014), overruled by Matter of A-B-, 27 I. & N. Dec. 316, 337 (2018), arguing that this case eliminates the frequency issues with her persecution evidence, because in the domestic violence context a single attacker is sufficient.  Instead, that case reversed an IJ decision denying that domestic violence victims were a sufficiently particular and visible social group to be eligible for asylum, rather than analyzing the frequency component of the persecution analysis.  A-R-C-G-, 26 I. & N. Dec. at 388-89.  In other words, A-R-C-G- is readily distinguishable from Martínez-Pérez's case.  But even if domestic violence cases were applicable here, she would fare no better.  After the Attorney General's decision in A-B- overruled A-R-C-G-, interpreting the "causal connection" and "government nexus" prongs of persecution analysis to exclude most domestic violence harms from satisfying that definition, the comparison Martínez-Pérez tries to make does her no favors.  See Matter of A-B-, 27 I. & N. Dec. at 337-38.

show past persecution, "the presence or absence of physical harm (and, indeed, the degree of harm inflicted) remains a relevant factor in determining whether mistreatment rises to the level of persecution." Lobo v. Holder, 684 F.3d 11, 17 (1st Cir. 2012) (quoting Gilca v. Holder, 680 F.3d 109, 115 (1st Cir. 2012)) (rejecting past persecution argument supported by "five (or six) incidents of threats or extortion"). Here, there is no evidence in the record that Martínez-Pérez was even slightly injured in any of these three incidents, at least not physically so, and none of the incidents compelled her to seek medical attention or help from the police. See Vasili, 732 F.3d at 90 (finding no past persecution in "traffic stop incident" where applicant was assaulted by socialist party members because "the record [was] wholly devoid of evidence as to the nature and extent of [his] injuries, if any" as well as "whether he sought medical attention"). Accordingly, there was substantial evidence to find, as the BIA and IJ did, that Martínez-Pérez did not carry her burden in showing harm serious enough to constitute past persecution.[7]

---

[7] Even if we were to peek into the other elements of past persecution, Martínez-Pérez fares no better. First, Martínez-Pérez has drawn no connection between any of the incidents and government action or inaction. At most, she assumes that even if she had complained to authorities, they would not have done anything due to the general discrimination towards disabled and Afro-Honduran people in Honduras. We have held that the nexus cannot be shown by "no more than a guess." López-Castro, 577 F.3d at 53. Second, as Martínez-Pérez conceded at the hearing, she did

## b. Future Persecution

As we explained before, even though there was substantial evidence supporting the BIA's and IJ's conclusions that Martínez-Pérez had not shown past persecution, she can still make out an asylum claim based on a well-founded fear of future persecution if she can satisfy a two-part inquiry that "she genuinely fears future persecution and that her fears are objectively reasonable." Carvalho-Frois, 667 F.3d at 72. The IJ, finding her testimony credible, assumed that the subjective "genuine fear" prong was satisfied. However, the IJ concluded, and the BIA agreed, that her fear was not objectively reasonable because it was based on the same three incidents that had been found to be insufficiently serious to show past persecution. We agree that substantial evidence supports this conclusion, and need not tread back through the same analysis. See López-Castro, 577 F.3d at 54 (finding no future persecution where evidence asserted in support of past persecution did "not equate with persecution").

---

not know who the intruder was in the home-invasion incident, and he did not say anything. Accordingly, as to that incident, she has additionally not carried her burden in showing that it was related to either of her statutorily protected categories: race and membership in a particular social group, i.e., people with disabilities. Her assumption that she would be targeted for home invasion because of her disability "left too much to speculation and surmise." Id.

- 13 -

### 3. Humanitarian Asylum

Martínez-Pérez alternatively argues that the BIA erred by failing to consider her claim for humanitarian asylum.[8]  The government contends that this argument was waived because Martínez-Pérez did not argue it specifically before the IJ.  But even if it is not waived, the government argues that for the same reasons Martínez-Pérez's evidence was insufficient in the asylum context, so shall it be in the humanitarian asylum context.  On this second point, we agree with the government.

First, we do not find that, because it wasn't specifically raised before the IJ, this argument was waived.  As we have previously held, where the applicant "has consistently asserted eligibility for asylum based on [] past harm" based on the same protected grounds she now claims for humanitarian asylum, the applicant need not "explicitly request[] [humanitarian asylum] from the IJ apart from [her] overall past-persecution-based asylum claim."  Ordonez-Quino v. Holder, 760 F.3d 80, 95 (1st Cir. 2014).  Accordingly, this argument is properly before us and may be considered on the merits.

But this is the end of the good news for Martínez-Pérez.  So-called "humanitarian asylum" provides that an applicant who has

---

[8] Having failed to argue in her opening brief any error in either the BIA's denial of her claim for withholding of removal, or its silence on the IJ's denial of her claim for withholding of removal under the CAT, we deem these arguments waived.

shown past persecution but failed to show a well-founded fear of future persecution can still be granted asylum if "(A) [t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or (B) [t]he applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal. . . ." 8 C.F.R. § 1208.13(b)(1)(iii). Having failed to show past (or any) persecution, subsection (b)(1)(iii) does not apply to Martínez-Pérez, and thus this argument fails. See Ayala v. Holder, 683 F.3d 15, 18 (1st Cir. 2012).

## 4. Due Process

Finally, Martínez-Pérez argues that the IJ's failure to consider all of her supporting evidence, namely, the aforementioned country-condition evidence, and its use of inapplicable case law violated her due process rights. Martínez-Pérez did not raise this argument before the BIA and thus has "failed to exhaust [her] administrative remedies on that issue, and we consequently lack jurisdiction to review the claim." Sunoto, 504 F.3d at 59.

## C. CONCLUSION

For the foregoing reasons, we **deny** the petition for judicial review.